UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Shawnqiz Lee,

        Plaintiff,

    v.

Eric Harris et al.,

        Defendants.

Case No. 3:21-cv-50199

Honorable Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shawnqiz Lee brings this action against two police officers employed by the City of Rockford, alleging that they violated his right to be free from unreasonable seizure and malicious prosecution under the Fourth Amendment and maliciously prosecuted him under Illinois law. Before the Court is a motion for summary judgment. For the following reasons, the motion is granted, and this action is dismissed with prejudice.

**I. Background**

On February 23, 2018, Julian Young was killed during a home invasion in Rockford, Illinois. Pl.'s Statement ¶ 8, at Dkt. 82. With him lived Jasmine Meneweather. *Id.* ¶ 5. Her account of the crime was this: hearing a knock at the front door, she opened it. Defs.' Statement ¶ 40, at Dkt. 87. Two men forced their way in; one held her at gun point in the living room and took her cell phone while

1

the other confronted Young in another room. Pl.'s Statement ¶ 6. Young began to

fight with the other man, so the man in the living room left to aid him. *Id.* ¶ 7.

Meneweather thereby escaped and called the police at a neighbor's house. *Id.*

In March of 2018, Meneweather sent a photo of the man she said had held

her at gunpoint during the home invasion to Detective Eric Harris, a Rockford

police officer investigating the crime—he could not identify the man and never

inquired into the source of the photo. *Id.* ¶ 9. Later that month, Harris was also sent

a photo by Judith Sanders, Young's aunt, which she said at an interview in April

depicted the two men involved in the home invasion, further offering that they were

brothers. *Id.* ¶¶ 10-11. After another police officer recognized one of the men, Harris

investigated whether he had any brothers; finding that he did, he compared a photo

from the Illinois Secretary of State's Office with the other two photos and found that

they all depicted Shawnqiz Lee. *Id.* ¶¶ 12-13.

In August of 2019, analysis of fingernail clippings taken during Young's

autopsy revealed the presence of another person's DNA. *Id.* ¶¶ 8, 14. Armed with

this information, Harris created a photo array with Lee surrounded by five

distractors of the same characteristics. *Id.* ¶ 15. In September of 2019, Detective

Brandon Pofelski interviewed Meneweather and showed her the photo array

prepared by Harris after having her sign a form counseling her that a suspect may

or may not be present, and that it was equally important to exclude the innocent as

to identify the guilty. *Id.* ¶ 17. Thirteen seconds after being presented with the

array, she pointed to Lee's picture and said, "It was him. That's the one I saw." *Id.* ¶

18. Pofelski asked her to elaborate, and she said, "When he had me at gunpoint, he

told me to turn around." *Id.* He noted that she was "visibly shaking and emotional." *Id.* On October 15, 2019, Lee was interviewed by Harris and another officer, where he provided a DNA sample and told them he had been at work on the date of the murder. Defs.' Statement ¶ 52; Defs.' Ex. 5 at 17, at Dkt. 74; Pl.'s Ex. 2 at 15, at Dkt. 82.

On November 7, 2019, Winnebago State's Attorney Marilyn Hite Ross asked Rockford Police Lieutenant Kurt Whisenand to draft a complaint charging Lee with home invasion and murder; Whisenand assigned Pofelski to do so, and Hite Ross reviewed and approved it the same day. Pl.'s Statement ¶ 21. The next day, Pofelski appeared before Judge Ronald White of Illinois' Seventeenth Judicial Circuit, presented the complaint, and testified that Meneweather had identified Lee as one of the men involved in the home invasion. *Id.* ¶ 23. Judge White thereupon issued a warrant for Lee's arrest for five counts of first-degree murder and three counts of home invasion, which was executed the same day. *Id.* ¶ 26.

On November 15, 2019, Lee's father and brother went to a police station and presented a timecard that they said showed that Lee had been at work during the home invasion. *Id.* ¶¶ 29-30. Pofelski and another officer left to speak with a manager at the store where Lee worked, who confirmed the authenticity of the timecard and told them that Lee could not have been unaccounted for at the time of the home invasion. *Id.* ¶ 31. They asked for video to confirm his presence but were told that the surveillance system had failed and no video existed. *Id.* Hite Ross was

informed of the purported timecard and the manager's interview, which were also documented in a report available to the State's Attorney's Office. *Id.* ¶ 33.

On December 4, 2019, Harris testified before a grand jury, which indicted Lee on sixteen counts of first-degree murder and one count of armed robbery. *Id.* ¶ 28. On December 20, 2019, analysis of the unknown DNA sample from Young's fingernails excluded Lee as a match. *Id.* ¶ 34. On January 31, 2020, Lee filed a motion seeking release from pretrial custody, arguing in part that his alibi and the DNA evidence diminished the weight of the evidence against him and reduced his likelihood of conviction at trial; the motion was denied by Judge White on February 14, 2020. *Id.* ¶ 36. On December 1, 2020, a new State's Attorney took office; on December 17, 2020, exercising judgment and discretion, he agreed to dismiss all the charges against Lee, and Lee was directed to be released from custody. *Id.* ¶ 39.

## II. Legal Standard

A party is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and judgment is proper as a matter of law. Fed R. Civ. P. 56. A fact is material when it could affect the outcome of the suit under the governing law, and a dispute is genuine when it could lead a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255; *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023).

## III. Analysis

### A. Section 1983

42 U.S.C. § 1983 provides a claim against any person who, under color of a state's "statute, ordinance, regulation, custom, or usage" deprives any person of a right secured by the federal Constitution. Liability must be based on each defendant's knowledge and actions. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). This may include either direct participation in the "offending act," acting or failing to act with reckless disregard of someone's constitutional rights when under a duty to safeguard them, or allowing an offending act to occur with one's knowledge or consent. *Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015). While a jury is usually entitled to determine reasonableness in a section 1983 action involving probable case, if the "underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013).

### B. Fourth Amendment liability under section 1983

#### 1. Detention without probable cause

"The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). Claims for false arrest or unlawful pretrial detention, whether before or after the initiation of legal process, sound in that Fourth Amendment prohibition.[1]

---

[1] Of course, the Fourth Amendment prohibits "unreasonable" seizures rather than seizures without probable cause. U.S. Const. amend. IV. But the existence of probable cause is a sine

*Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019). If probable cause

existed, in the ordinary case it is an "absolute defense to claims under section 1983

against police officers for an allegedly unreasonable seizure, whether a false arrest

or a wrongful pretrial detention." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir.

2019); *see also Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021).

Whether an officer has probable cause to arrest depends on the underlying

state criminal law. *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 761 (7th Cir.

2006). Probable cause exists when, objectively, the "totality of the facts and

circumstances known to the officer . . . would warrant a reasonable, prudent person"

in believing that the detainee had committed a crime. *Abbott*, 705 F.3d at 714.

When a magistrate finds that probable cause exists in ordering an arrest or

detention, that finding is accorded substantial deference and the existence of

probable cause is presumed. *Johnson v. Myers*, 53 F.4th 1063, 1068-69 (7th Cir.

2022); *Lewis*, 914 F.3d at 477. This presumption can be defeated, however, by

showing either that (1) the information before the magistrate was "so lacking in

indicia of probable cause as to render official belief in its existence unreasonable," or

that (2) material facts were intentionally or recklessly withheld from the

magistrate. *Johnson*, 53 F.4th at 1069 (cleaned up). An omitted fact is material if its

inclusion would have negated the existence of probable cause. *See United States v.*

*Sims*, 551 F.3d 640, 645 (7th Cir. 2008). An indictment by a grand jury is also prima

---

qua non of a reasonable seizure, *Chambers v. Maroney*, 399 U.S. 42, 51 (1970), and Lee does
not challenge the reasonableness of any other aspect of his seizure, so the inquiry into
reasonableness and the existence of probable cause merge.

facie evidence of the existence of probable cause; this presumption may likewise be overcome by evidence that the indictment was obtained by improper or fraudulent means. *Coleman v. City of Peoria*, 925 F.3d 336, 351 (2019).

### 2. Malicious prosecution

In *Thompson v. Clark*, the Supreme Court recognized a claim for malicious prosecution under the Fourth Amendment whose "gravamen . . . is the initiation of charges without probable cause." 596 U.S. 36, 42 (2022). To maintain such a claim, a plaintiff must at least show that a prosecution (1) was initiated without probable cause and (2) ended without a conviction. *Id.* at 49. Probable cause is thus also a complete bar to a malicious prosecution claim. *Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015).

### C. Lee's claims

Lee brings claims under section 1983 against Pofelski and Harris for unlawful pretrial detention (Counts I and II) and malicious prosecution (Count III) in violation of the Fourth Amendment, as well as a claim for malicious prosecution under Illinois law (Count IV). All founder on one undisputed fact: Meneweather identified Lee to the police as one of the men who had participated in the home invasion. This established probable cause for his arrest, detention, and prosecution, and his claims therefore fail.

### 1. Counts I and II

Lee alleges that his arrest and subsequent detention were unreasonable. He argues that he can overcome their presumptive validity—having been duly

authorized by a magistrate—by showing that (1) there were insufficient indicia of probable cause before the magistrate; or (2) that even if there were probable cause based on what was presented to the magistrate, material facts withheld by the police defendants would have defeated a finding of probable cause if properly presented.

As to a lack of probable cause in the first instance, Lee makes two arguments. First, he claims that the criminal complaint was "bereft of facts supporting probable cause." Pl.'s Resp. Memo. at 4-5, at Dkt. 81. But it is undisputed that, in applying for a warrant, Pofelski orally testified that Meneweather had identified Lee as one of the men who had broken into the house.[2] A single eyewitness's report is sufficient to support a finding of probable cause. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 440 (7th Cir. 1986); *Tangwall v. Stuckey*, 135 F.3d 510, 519-20 (7th Cir. 1998). Meneweather's identification thus established probable cause for all the offenses with which Lee was charged, providing direct evidence for the home invasion charges for which he was arrested[3] and the armed robbery charge authorized by the

---

[2] The record indicates that Pofelski "provided sworn oral testimony to Judge White about the facts of the home invasion," including that Meneweather had "identified" Lee as the man who had held her at gunpoint. Ex. 6 ¶ 21, at Dkt. 74. Even assuming, in Lee's favor, that Pofelski's recitation of the facts omitted certain additional details—that the identification came from a photo array with five filler photos (whose propriety has not been questioned), Pl.'s Statement ¶¶ 15-17; that she identified him definitively within seconds, *id.* at ¶ 18; or that she "visibly sh[ook] and [was] emotional" after she identified him, *id.*—these would only have bolstered the credibility of the identification beyond what was necessary for probable cause.

[3] Home invasion is the unauthorized entry and use or threat of force by the invader while armed with a deadly weapon. 720 ILCS 5/19-6(a)(3)-(5); *People v. Gilyard*, 237 Ill. App. 3d 8, 21 (1992).

grand jury,[4] as well as circumstantial evidence for the first-degree murder charges, both at the time of his arrest and later.[5] Secondly, Lee argues that because Pofelski lacked "personal knowledge" of what he swore to, probable cause could not have been validly found. Pl.'s Resp. Memo. at 3. But the Supreme Court has long recognized that hearsay supplied by a complainant can provide probable cause to support a warrant. *See Jones v. United States*, 362 U.S. 257, 269 (1960).

As to withholding material facts, his chief argument is that he gave an alibi to the police during his October 15, 2019 interrogation, but this was not disclosed to the magistrate and would have defeated probable cause. Pl.'s Resp. Memo. at 3. Again, however, a single eyewitness's statement, without any "narration of contrary evidence," can provide probable cause to support the issuance of a warrant, so this was not a material fact. *Gramenos*, 797 F.2d at 440.

Lee also attacks the credibility of Meneweather's identification, arguing that a litany of additional facts not disclosed to the magistrate would have negated probable cause, and that they ought to have been investigated further before the officers could reasonably have applied for a warrant.[6] He argues that the evidence

---

[4] Armed robbery is the taking of property from the person or presence of another by use of force or by threatening the imminent use of force, while armed with a dangerous weapon. 720 ILCS 5/18-2, 18-1; *People v. Armstrong*, 183 Ill. 2d 130, 147-48 (1998).

[5] First-degree murder is the causing of a death knowingly or intentionally, or while committing a forcible felony. 720 ILCS 5/9-1(a)(1)-(3).

[6] These include concerns about the general reliability of the identification, because it came more than a year after the murder, and because at her deposition, she reported less than full confidence that her identification was correct, as well as the possibility that she was involved, including evidence that she answered the door contrary to Young's instructions; that she initially claimed not to know the man who had held her at gunpoint but was friends with him on either Facebook or Snapchat; that after reviewing her phone, officers found that she had sent a text to someone in the minutes before the home invasion whom they believed she was in a relationship with; that in a jail call, Quintarius Gray, Young's

available to the officers should have raised the suspicion that Meneweather was "actually an accessory to the crimes of which she ostensibly was a victim []." Pl.'s Resp. Memo. at 9. But in the main, "[a]s long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest......." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (cleaned up). Police officers are under no constitutional obligation to "exclude every possibility that [a witness] was not telling the truth." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003). True, certain circumstances might lead a "reasonable officer to be suspicious", *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994)—the witness is "babbling or inconsistent," *Gramenos*, 797 F.2d at 439, or the officer knows that there is a "significant chance that [the witness] bore a grudge" against the alleged perpetrator or had some ulterior motive to make the accusation—and require him to "do more" before making an arrest on the witness's "mere say-so." *Hebron*, 18 F.3d at 423. To the extent that such a duty was triggered, the officers responded reasonably and did do more: in response to these rumors, they re-interviewed Meneweather twice. Defs.' Statement ¶¶43-44. Nothing in the record indicates that they found anything to

---

brother, said that she was in a relationship with the driver of the getaway car; that she acknowledged that there were rumors that she was involved in the killing; and that during the interview where she identified Lee, she asked whether the getaway car had been identified and requested that her face be blurred in the recording of the interview. Pl.'s Resp. at 7-11; Defs.' Statement ¶¶ 40, 43-45, 47-49. Lee never explains how Meneweather's alleged lack of confidence in the identification years later somehow negates probable cause based on an identification provided to the police years earlier.

substantiate this theory.[7] Because the officers acted reasonably in relying on

Meneweather's identification, Lee cannot "undercut the finding of probable cause by

claiming that the police failed to introduce other facts ......." *Beauchamp*, 320 F.3d at

745 (7th Cir. 2003).

Next, Lee suggests that it was unreasonable to arrest him without

investigating his alibi or waiting for the results of the DNA testing. Pl.'s Resp.

Memo. at 6. Police officers, however, need not conduct "an incredibly detailed

investigation at the probable cause stage...... the inquiry is whether an officer has

reasonable grounds on which to act, not whether it was reasonable to conduct

further investigation." *Spiegel*, 196 F.3d at 724–25 (7th Cir. 1999). Once probable

cause has been established, pre-arrest investigation may stop, and there is no

obligation to investigate all potentially exculpatory details. *Nelson v. Village of

Lisle*, 437 F. App'x 490, 494 (7th Cir. 2011). The police cannot ignore "conclusively

established evidence that defeats probable cause or clearly exculpatory facts," but

are under no affirmative duty to uncover them when probable cause exists. *Id.*

Based on Meneweather's identification, probable cause existed, and the Fourth

Amendment required no more for arrest or detention.

Lastly, Lee argues that his detention became unreasonable when he was

excluded as a match for the DNA under Young's fingernails and the genuineness of

his timecard and his presence at work were verified by his manager. Pl.'s Resp.

---

[7] Additionally—although their investigation was reasonable under the circumstances—the gravity of the crime under investigation would have tended to justify the police in "compress[ing] their investigation and . . . arrest[ing] on less information than if they could investigate at their leisure." *Llaguno v. Mingey*, 763 F.2d 1560, 1566 (7th Cir. 1985).

11

Memo. at 12-13. Of course, the "continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). These later developments, however, while perhaps exculpatory (and certainly not inculpatory), were not conclusive proof of innocence and thus not sufficient to defeat the existence of probable cause at any point in his detention. Although the DNA evidence was helpful to him, insofar as it did not implicate him in the crime, neither did it conclusively demonstrate that he was not involved. And though Lee's manager vouched for his presence at work, officers never possessed any evidence, video or otherwise, that conclusively demonstrated it, and they were not required to seek it out. As things stood, had his prosecution proceeded, the trial would have hinged on a credibility contest between Lee and those attesting to his presence at work against Meneweather's identification of him as one of the perpetrators. Had Meneweather been believed against the evidence to the contrary, this would have been sufficient to support a conviction beyond a reasonable doubt; her identification therefore must have been sufficient to support probable cause for Lee's arrest and detention. *Gramenos*, 797 F.2d at 440.

### 2. Count III

Lee's claim for malicious prosecution likewise fails because the officers had probable cause to support every charge underlying his arrest and contained within the grand jury indictment. *See Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021).

### 3. Qualified immunity

Even if probable cause did not exist to support Lee's detention or prosecution as to one or more of the charges brought against him, because a reasonable officer could have mistakenly believed that probable cause existed, Harris and Pofelski are entitled to qualified immunity from suit. *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015). Based on the information available to them, and because they were under no obligation to investigate further, a reasonable officer could have believed that—notwithstanding any reasons to doubt Meneweather's identification, that the DNA test was still pending, and Lee's alibi had not been investigated—probable cause existed to arrest and detain Lee.[8] *See id.* at 251. And that the State's Attorney's Office, rather than the police themselves, initiated Lee's arrest and continued his prosecution even after possibly exculpatory information had emerged "goes a long way toward solidifying" their qualified immunity defense, making it more reasonable for the officers to have believed that probable cause in fact existed. *See id.* Because it is at least arguable that probable cause existed, the officers are entitled to qualified immunity.

\*  \*  \*

Counts I, II, and III are therefore dismissed.

### 4. Count IV

---

[8] Lee suggests that Harris did not regard an arrest without the DNA results as reasonable. Pl.'s Resp at 5; *see* Defs.' Statement ¶ 54. Even assuming this is what Harris subjectively believed at the time of the arrest and detention, that he had a difference of opinion does not alter the conclusion that a reasonable officer could have believed probable cause existed under the circumstances.

Lee also brings a state-law claim for malicious prosecution. To make out a claim of malicious prosecution under Illinois law, a plaintiff must show: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). Because there is no genuine issue of material fact as to the existence of probable cause, Count IV must fail and is dismissed.

**5. Count V**

Finally, Lee brings a claim against the City of Rockford seeking indemnification for liability incurred by its agents. The Illinois Local Government and Governmental Employees Tort Immunity Act requires municipalities to pay tort judgments against its agents for acts within the scope of their employment, 745 ILCS 10/9-102, but they are not liable for any injuries that result from acts or omissions by the agent where the agent is not liable. 745 ILCS 10/2-109. Because Harris and Pofelski are not liable, this indemnification claim must fail and is dismissed.

## IV. Conclusion

Because no reasonable jury could find for Lee on any of his claims, the motion

for summary judgment is granted. This action is dismissed with prejudice.

Date: December 15, 2023

_____
Honorable Iain D. Johnston
United States District Judge

15